J-S57025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRELL M. BOWENS | |
| Appellant | No. 7 EDA 2015 |

Appeal from the PCRA Order November 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013270-2007

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                      **FILED OCTOBER 21, 2015**

Terrell M. Bowens appeals from the order entered on November 26, 2014, in the Court of Common Pleas of Philadelphia County, that dismissed, after a limited evidentiary hearing, his petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA).[1]  Bowens claims the PCRA court erred when it denied him relief, "partially with a hearing and partially without a hearing on various claims made under the PCRA."  Bowens' Brief at 3.  Based upon the sound reasoning of the PCRA court, we affirm.

As the PCRA court has aptly summarized the background of this case, we do not restate it here.  **See** PCRA Court Opinion, 3/5/2015, at 1–5.

---

[1]  42 Pa.C.S. §§ 9541–9546.

On January 5, 2012, Bowens filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended PCRA petition on behalf of Bowens. In the amended PCRA petition, Bowens alleges that (1) trial counsel was ineffective for failing to call and investigate certain potential witnesses, and failing to raise this issue of ineffectiveness on appeal, (2) trial counsel was ineffective for interfering with Bowens' right to testify by giving incorrect advice, (3) appellate counsel was ineffective for failing to raise the issue of lack of adequate redaction of Bowens' co-defendant's statement, and (4) appellate counsel was ineffective for failing to raise the issue that Bowens was unconstitutionally forced to go to trial with a capital defendant.

The PCRA court granted an evidentiary hearing solely on the issue of whether trial counsel gave incorrect advice that interfered with Bowens' right to testify in his own defense. At the conclusion of the hearing, the PCRA court denied all Bowens' claims. This appeal followed.[2]

_____

[2] Our review is guided by the following legal principles:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the

*(Footnote Continued Next Page)*

Having reviewed the record, the briefs of the parties, and the applicable law, we conclude the PCRA court properly determined Bowens' issues warrant no relief. Furthermore, the PCRA court has provided a thorough and well-reasoned discussion in support of its decision. *See* PCRA Court Opinion, 3/5/2015, at 5–16 (finding: (1) trial counsel was not ineffective for failing to call certain witnesses because Bowens made a knowing, intelligent and voluntary waiver of his right to call witnesses in his defense, and, further, calling the witnesses Bowens claims should have been called would not have changed the outcome of the trial; (2) trial counsel was not ineffective in interfering with Bowens' right to testify where trial counsel credibly testified he did not advise Bowens that his prior convictions for drug-related offenses and aggravated assault could be used for impeachment purposes and where counsel had other strategic reasons for recommending Bowens not testify; (3) appellate counsel was not ineffective for failing to raise the adequacy of the redaction of Bowens' co-defendant's confession because the redacted confession made no reference to Bowens

*(Footnote Continued)* ——————————

> reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations and internal citations omitted).

and did not expressly implicate him as a co-conspirator, and the court instructed the jury the statement could only be used against Bowens' co-defendant; (4) appellate counsel was not ineffective for failing to raise the constitutionality of Bowens' joint trial with a capital co-defendant where Bowens could present no case law to support this claim, and counsel cannot be ineffective for failing to raise novel legal theories[3]).

We agree with the PCRA court's analysis. Accordingly, we adopt the PCRA court's opinion as dispositive of this appeal.

The parties are directed to attach a copy of the PCRA Court Opinion, 3/5/2015, in the event of further proceedings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/21/2015</u>

---

[3] The Commonwealth points out that in **Buchanan v. Kentucky**, 483 U.S. 402 (1987), the United States Supreme Court held that the joint trial of a capital defendant and a non-capital codefendant before a death qualified jury did not violate the Sixth Amendment entitlement to a fair and impartial jury. **See** Commonwealth's Brief at 10.

COMMONWEALTH OF PENNSYLVANIA

FILED

MAR 0 5 2015

v.

Criminal Appeals Unit
First Judicial District of PA

TERRELL BOWENS



FILED
CP-51-CR-0013270-2007 Comm. v. Bowens, Terrell M.
Opinion

7266636731

COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT

CP-51-CR-0013270-2007

7 EDA 2015

## OPINION

LEON W. TUCKER, J.                    DATE: March 5, 2015

### I.    Procedural History

This matter comes before the Superior Court on appeal from this Court's denial of Terrell Bowens' (hereinafter referred to as "Appellant") Amended PCRA Petition after an evidentiary hearing on the issue of whether Appellant's trial counsel was ineffective by giving Appellant incorrect advice which influenced Appellant's decision to not testify at trial.

The pertinent procedural history is as follows:

On February 10, 2009, after a joint jury trial with co-defendant Jamel Ford before this Court, Appellant was convicted of Solicitation - Murder (18 PA. C.S. § 902) ("Solicitation"), Conspiracy - Murder (18 PA. C.S. § 903) ("Conspiracy"), Witness Intimidation (18 PA. C.S. § 4952) ("Intimidation"). On June 12, 2009, the Court sentenced Appellant to five to ten (5-10) years incarceration for Solicitation, five to ten (5-10) years consecutive incarceration for Conspiracy, and five (5) consecutive years probation for Intimidation.

Thereafter, Appellant appealed his conviction and sentence to the Superior Court asserting that (1) the Court erred in failing to declare a mistrial after the Commonwealth introduced evidence that a witness was in protective custody; (2) the Commonwealth's closing argument contained improper and inflammatory statements; and (3) there was insufficient evidence to support the jury's verdicts. *Commonwealth v. Bowens*, 1874 EDA 2009 (Pa. Super.

## LOWER COURT OPINION

Sept. 27, 2010). The Superior Court affirmed Appellant's conviction and judgment of sentence. *Id.* On January 12, 2011, the Supreme Court of Pennsylvania denied Appellant's Petition for Allowance of Appeal. *Com. v. Bowens,* 557 EAL 2010 (Pa. Jan. 12, 2011). Appellant was represented by Samuel Stretton, Esquire at trial and on direct appeal.

On January 5, 2012, Appellant, *pro se,* timely filed a Post Conviction Relief Act (hereinafter referred to as "PCRA") Petition pursuant to 42 Pa.C.S. § 9545 because it was filed within one year of the conclusion of direct review. On March 22, 2012, David Rudenstein, Esquire, entered his appearance on behalf of Appellant. On August 8, 2013, Mr. Rudenstein filed an Amended PCRA Petition on behalf of Appellant asserting: (1) trial counsel was ineffective for failing to call and investigate certain potential witness and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on this issue; (2) trial counsel was ineffective for interfering with Appellant's right to testify in his own defense by giving incorrect advice; (3) appellate counsel was ineffective for failing to raise on appeal the lack of adequate redaction of Appellant's co-defendant's confession pursuant to the Confrontation Clause of the United States Constitution; and (4) Appellant was unconstitutionally forced to go to trial with a capital defendant.

On March 19, 2014, the Commonwealth filed a Motion to Dismiss Appellant's Amended PCRA Petition asserting that the Amended Petition should be dismissed without an evidentiary hearing or in the alternative, that an evidentiary hearing should be held solely on the issue of whether Appellant's trial counsel properly advised Appellant regarding impeachment with prior convictions if he were to testify. At the time of trial, Appellant had two prior convictions for narcotics offenses.

2

On May 19, 2014, the Court granted Appellant an evidentiary hearing solely on the issue of whether Petitioner's trial counsel, Mr. Stretton, advised Appellant that he would be impeached by prior convictions if he were to testify, and if so, whether Appellant's failure to testify would likely have changed the outcome of his trial.

On November 26, 2014, the Court held the evidentiary hearing at which Mr. Stretton and Appellant testified. The Court found Mr. Stretton's testimony credible that he never advised Appellant that he could be impeached with his prior narcotics offenses, but nonetheless advised Appellant not to testify for other reasons. At the conclusion of the hearing, the Court denied Appellant's Amended PCRA Petition in whole.

On December 23, 2014, Appellant filed a notice of appeal to the Superior and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), raising the following issues on appeal, in pertinent part, verbatim:

That the Honorable PCRA Court erred where it dismissed the Defendant's Amended PCRA Petition after PCRA hearing, even though the Defendant properly pled, and could have proven, several causes for relief including the following:

a. That trial counsel was ineffective when he failed to call and investigate vital witnesses at trial and appellate counsel was ineffective for failing to raise the issue on direct appeal;

b. That trial counsel was ineffective when he unconstitutionally interfered with the Defendant's free choice of electing to testify at trial;

c. appellate counsel was ineffective where that attorney failed to raise the issue of lack of adequate redaction and lack of confrontation, which violated the Defendant's rights, under the Sixth (6th) Amendment to the Federal Constitution;

d. the Defendant should receive a new trial as he was unconstitutionally forced to go to trial with a capital defendant;

1925(b) Statement (12/23/2014).

## II.  Facts

The following facts were established at trial:

On December 5, 2006, around 11:10 p.m., Bowens' co-defendant, Jamel Ford, shot and killed Jamal Wright and shot Stephanie Wilcox in the face while at the intersect[ion] of Emerald and Ontario Streets in Philadelphia. N.T. (1/28/09) at 89-108, 119; (1/29/09) at 111-22, 133-34, 169-202; (1/30/09) at 71-83, 225-26; N.T. (2/1/09) at 29-46, 55. Haneef Dyches, who was also known as "Neef" and "Neef Bucks," witnessed the incident. N.T. (1/28/09) at 89-97; (1/30/09) at 71-79, 225-26. As Dyches began to walk away, he heard a click and looked back over his shoulder. N.T. (1/30/09) at 84-85. Ford, with his gun aimed at the back of Dyches' head, told Dyches "Pussy, you ain't seen nothing" and then left the area. N.T. (1/30/09) at 84-90. Luis Rivera, who was inside his residence on the 2000 block of Emerald Street, heard the three shots, looked out the window, saw Ford and Dyches walking in opposite directions, and saw Wright's body lying on the sidewalk. N.T. (2/2/09) at 236-56.

An investigation ensued, during which Wilcox and Dyches gave statements and, when shown an array with Ford's photograph, separately identified Ford, who they knew as 'Face,' as the shooter; Wilcox also identified Dyches, by photograph, as the eyewitness. N.T. (1/28/09) at 116-23; (1/30/09) at 90-93; (2/3/09) at 27-54. In February of 2007, Ford was arrested in relation to the above incident. N.T. (1/28/09) at 165-72. Ford remained in custody while awaiting trial and was housed at Philadelphia's Curran Fromhold Correctional Facility ("CFCF") while awaiting trial; Bowens, who was also in custody for an unrelated matter, was also housed at CFCF, with a cell in the same cellblock as Ford. *Id.* at 104-06; (2/2/09) at 74-95, 154-64; (2/3/09) at 104-111.

On April 25, 2007, Dyches testified at Ford's preliminary hearing in relation to the December 5, 2006 shootings. N.T. (1/30/09) at 101. On that day and for the next six (6) months, Dyches was in custody for an unrelated case and was housed at the Philadelphia Detention Center ("PDC), cell block "G." *Id.* at 104-06; (2/2/09) at 85.

On August 3, 2007, as Philadelphia Corrections Officer Chi Haliburton, an officer with fourteen years experience, was on duty at the Philadelphia Detention Center and was inspecting incoming mail. Her suspicions were aroused by a photograph of inmate Haneef Dyches in the letter postmarked "August 2, 2007," which was addressed to Jamel Bowens, an inmate housed in the "D" cell block, with a return address of "Rel-Rel, 2528 North 15th Street, Philadelphia, Pennsylvania, 19132" N.T. (2/2/09) at 74; (2/4/09) at 14. The writer, who identified himself in the letter as "Terrell Bowens, PP Number 968912, 7901 State Road, Philadelphia," requested that Jamel Bowens "take care" of "some bull on your block named Neef Buck...that nigga ratting on my folks...Bang that nigga the fuck out or fuck that nigga up...Make that nigga check on P.C.,[1]" and enclosed a copy of Dyches' statement in this matter, which was modified with a

---

[1]     "P.C." is a reference to protective custody, a heightened security custody for inmates who are not permitted to mingle with the prison population. N.T. (2/2/09) at 93-95.

4

superimposed copy of Dyches' police photograph. N.T. (2/2/09) at 74-95; (2/3/09) at 87-102.

On occasion, inmates housed in separate cellblocks at the Detention Center are able to interact with each other in the kitchen, church, medical center, and gym. N.T. (2/2/09) at 138-40.

Police investigation revealed that Terrell Bowens resided at 2528 North 15th Street in Philadelphia, had a matching Police Photograph Number/PP Number, was in custody at CFCF and was housed in Ford's cellblock. N.T. (2/2/09) at 74-95, 154-64; (2/3/09) at 104-111. A search of Terrell Bowens' cell by prison personnel led to the recovery of, *inter alia*, correspondence addressed to "Rel-Rel," while a search of Ford's cell led to the recovery of, *inter alia*, Dyches' photograph. N.T. (2/3/09) at 111-24.

On August 10, 2007, Ford received and waived *Miranda* warnings and gave a statement in regards to the above letters, in which he admitted that he had given Dyches' photograph to "people on my block, to know who is snitching" and that he had "a guy...in the Law Library" make the superimposed photocopy of Dyches' photograph and statement. N.T. (2/3/09) at 124-37.

Trial Ct. Op. (09/14/2009) at 2-4.

### III. Legal Analysis

#### A. Trial and appellate counsel was not ineffective for failing to call witnesses or for failing to raise his own ineffectiveness on direct appeal.

Here, Appellant asserts that trial counsel was ineffective for failing to call Michael Wallace, Esquire, counsel for Jamel Ford at the time; Jamal Ford, Appellant's co-defendant; and Gregory Tunstall, a fellow inmate of Appellant's at CFCF in 2007. 42 Pa.C.S. § 9545(d)(1)[2] Certificate (01/05/2011). According to the *pro se* certificate filed by Appellant in support of his PCRA Petition pursuant to 42 Pa.C.S. § 9545(d)(1), Mr. Wallace, if called as a witness, would have testified that he did not give Ford a copy of Dyches' statement and photograph until after August 1, 2007, the date when Appellant allegedly mailed the letter. *Id.* If called, Ford would have also testified that he did not receive discovery from his attorney until after August 1, 2007.

---

[2] 42 Pa.C.S. § 9545(d)(1) provides that "[w]here a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible."

*Id.* If called, Tunstall would have testified that the prison slang "bang out" meant to knock out or punch, not murder or shoot. *Id.*

Under 42 Pa. C.S. § 9543, commonly known as the Post Conviction Relief Act, a petitioner must plead and prove by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa. C.S. § 9543(a)(2). 42 Pa. C.S. § 9543(a)(2); *Commonwealth v. Koehler*, 36 A.3d 121, 131-132 (Pa. 2012). Relevant to the instant Amended PCRA petition is whether Appellant proved "ineffective assistance of counsel which in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). As a general rule, claims of ineffective assistance of trial counsel should be saved for collateral review. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002).

To prove an ineffective assistance of counsel claim, a petitioner must prove that: (1) the underlying issue is of arguable merit; (2) that counsel's actions lacked an objective reasonable basis; and (3) that the petitioner was prejudiced by counsel's act or omission. *Koehler*, 36 A.3d at 132 (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). For a claim to have arguable merit, a petitioner must prove "that the underlying legal claim …has 'arguable merit.' " *Commonwealth v. Steele*, 961 A.2d 786, 821 (Pa. 2008)(emphasis in original). In regards to prejudice, the third prong of the ineffective assistance of counsel test, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Koehler*, 36 A.2d at 132. The failure to show any prong of this test will cause the entire ineffective assistance of counsel claim to fail. *Id.* at 132. Furthermore, counsel is presumed to be effective; the appellant has the burden of proving otherwise. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

6

Additionally, when a petitioner asserts that his trial counsel was ineffective for failing to call witnesses, the petitioner must show:

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth. v. Michaud*, 70 A.3d 862, 868 (Pa. Super. 2013).

When a defendant makes a knowing, intelligent, and voluntary choice concerning trial strategy, such as not calling witnesses, his later claim that trial counsel was ineffective on this basis lacks arguable merit. *Commonwealth v. Rios*, 920 A.2d 790, 803 (Pa. 2007) *abrogated on other grounds by Commonwealth v. Tharp*, 101 A.3d 736 (Pa. 2014) *citing Commonwealth v. Paddy*, 800 A.2d 294, 315-16 (Pa. 2002)(holding that where the trial court conducted a colloquy during which the defendant confirmed that he knew he had a right to call witnesses and agreed with his counsel's decision not to call them, defendant could not later assert that trial counsel was ineffective). *Paddy* recognized that "[t]o hold otherwise would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Paddy*, 800 A.2d at 316. When a PCRA petitioner made such a knowing, intelligent and voluntary waiver of his right to call witnesses at trial, the PCRA court need not address the merits of the petitioner's ineffectiveness of counsel claim on this ground. *Id.* at 315.

Here, Appellant made such a knowing, intelligent, and voluntary waiver of his right to call witnesses in his defense. On February 4, 2009, during trial, the Court engaged in an extensive colloquy with Appellant, and at the conclusion of which, the Court determined that Appellant knowingly, intelligently, and voluntarily gave up his right to testify and present evidence. N.T. Trial (02/04/2009) at 168-174. The Court specifically asked Appellant if there

7

were witnesses that he wished to call, and Appellant responded "no". N.T. Trial (02/04/2009) at 173. In his Amended PCRA Petition, Appellant makes no averments that his waiver was anything less than knowing, intelligent, and voluntary. Therefore, Appellant's claim that trial counsel was ineffective for not calling witnesses lacks arguable merit and therefore, Appellant's claim necessarily fails. *Paddy*, 800 A.2d 294; *Koehler*, 36 A.2d at 132.

Although Appellant's claim that trial counsel was ineffective for failing to call witnesses lacks arguable merit and therefore fails at the outset, the Court, nevertheless, addresses other ways in which this claim for relief fails.

First, regarding Mr. Wallace as a possible witness, Appellant's Amended Petition ignores the fact that at trial, a stipulation was entered on the very same point of fact that Appellant asserts that his trial counsel should have called Mr. Wallace to establish by testimony. At trial, the parties stipulated that if called as a witness, Mr. Wallace, would authenticate a letter that he sent his client, Ford, dated August 19, 2007, containing the discovery for Ford's case. N.T. Trial (02/03/2009) at 12-13. Despite hearing this stipulation the jury nevertheless found that Ford had obtained Dyches' statement and photograph and passed it along to Appellant before August 19, 2007. Even assuming all of the other elements of an ineffective assistance of counsel claim were met with respect to the failure to call Mr. Wallace, Appellant does not plead what prejudice he suffered as a result of the stipulation as opposed to Mr. Wallace's live testimony.

Second, Appellant's trial counsel cannot be deemed ineffective for calling Ford, Appellant's co-defendant at trial, because Ford invoked his Fifth Amendment privilege not to testify at trial and therefore, was not available as a witness. N.T. Trial (02/04/2009) at 179, 181, and 186. Appellant asserts that if called, Ford would have also testified that he did not receive discovery from his attorney until after Appellant allegedly sent the letter in question and that he

8

never gave Appellant any of his discovery. However, Ford stated on the record at trial, that he did not wish to testify, and he could not be compelled to testify.

Third, Gregory Tunstall's proposed testimony would not have been admissible at trial. Appellant asserts that if called, Tunstall would have testified as to the meaning of prison slang used in the letter. However, Tunstall would not have been permitted to testify as to what the author of the letter meant by the words used. Pursuant to Pa.R.E. 602, a witness may only testify to a matter if sufficient evidence is introduced to support a finding that the witness has personal knowledge of the matter. Here, Tunstall could not have personal knowledge of what the author of the letter meant unless he wrote the letter, which is not Appellant's position. Therefore, because Tunstall's proposed testimony would not have been admissible at trial, Appellant's trial counsel cannot be deemed ineffective for failing to call him as a witness.

Regarding Appellant's claim that trial and appellate counsel was ineffective for failing to raise his own ineffectiveness on appeal for failing to call witnesses, Appellant failed to plead all of the elements necessary to sustain a layered ineffectiveness of counsel claim. A layered ineffective assistance of counsel claim involves averments that appellate counsel is effective for failing to raise trial counsel's ineffectiveness. *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011).

> In order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must plead, present, and prove the ineffectiveness of [appellate counsel], which ... necessarily reaches back to the actions of [trial counsel]. To preserve (plead and present) a claim that [appellate counsel] was ineffective ..., the petitioner must:(1) plead, in his PCRA petition, that [appellate counsel] was ineffective for failing to allege that [trial counsel] was ineffective ... and (2) present argument on, i.e., develop, each prong of the *Pierce* test as to [appellate counsel's] representation, in his briefs or other court memoranda. Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim.

9

*Commonwealth v. Dennis*, 950 A.2d 945, 954-55 (Pa. 2008) *citing Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003). The arguable merit prong regarding appellate counsel's ineffectiveness may only be satisfied by pleading and proving all three elements of the *Pierce* test regarding the underlying allegation of trial counsel's ineffectiveness. *Dennis*, 950 A.2d 945.

Here, Appellant's layered ineffective assistance of counsel claim fails for several reasons. First, Appellant's Amended PCRA Petition does not allege any of the required elements necessary to sustain such a claim. Appellant only generally alleges that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to call witnesses. Second, as discussed above, trial counsel was not ineffective for failing to call witnesses. Therefore, even if properly pled, Appellant's layered ineffective assistance of counsel claim lacks arguable merit. Third, post-*Grant*, a petitioner must generally wait until PCRA review to raise claims of trial counsel ineffectiveness and the failure of direct appeal counsel to raise claims of trial counsel's ineffectiveness will not waive the claim. *Grant*, 813 A.2d at 728. Therefore, appellate counsel could not be deemed ineffective for failing to assert that trial counsel was ineffective on direct appeal here even if that claim were meritorious.

## B. Trial counsel was not ineffective by interfering with Appellant's right to testify in his own defense.

Appellant asserts that trial counsel interfered with his right to testify at trial by incorrectly advising him regarding the rules for impeachment with prior convictions. Appellant alleges that his trial counsel advised him not to testify at trial because he would be impeached by his prior criminal record and this would make him look incredible as a witness, and but for this advice, Appellant would have testified. Prior to the conviction at issue, Appellant had convictions for drug-related offenses and aggravated assault. N.T. Hearing (11/26/2014) at 17. Pursuant to

10

Pa.R.E. 609, these convictions could not have been used to impeach Appellant's credibility because neither involved dishonesty or a false statement.

The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000). In order to sustain a claim that counsel was ineffective for failing to advise the petitioner of his rights in this regard, the petitioner must demonstrate either that trial counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf, and that counsel had no alternative reasonable strategy for advising the petitioner not to testify. *Id.* (finding that the petitioner's trial counsel incorrectly advised him that his prior drug-trafficking and firearms convictions could be used for impeachment and that trial counsel admittedly had no other reasonable bases for advising the petitioner not to testify).

On November 26, 2014, the Court held an evidentiary hearing on this issue at which Appellant and his trial counsel, Mr. Stretton testified. Based upon the credibility of the witnesses, the Court found that Mr. Stretton properly advised Appellant on the manner in which his previous convictions could come in, not that the Commonwealth could used them to impeach Appellant, but rather that they could only be used to rebut any evidence of Appellant's good character if offered. N.T. Hearing (11/26/2014) at 33-35.

Moreover, as a matter of trial strategy, the Court found that Mr. Stretton had other reasonable grounds, not related to the potential introduction of Appellant's prior convictions, for advising Appellant that it would be in his best interest if he did not testify. First, Mr. Stretton testified that he explained to Appellant that if he testified that he did not write the letter, Mr. Stretton would have to seek to withdraw as counsel or switch the narrative form of examination

11

to avoid suborning perjury because Appellant had fully admitted to him that Appellant wrote the letter. N.T. Hearing (11/26/2014) at 31 and 36-38. Second, Mr. Stretton testified that if Appellant testified, at sentencing, the Court may have considered his untruthfulness and imposed a harsher sentence. N.T. Hearing (11/26/2014) at 35-36. Third, Mr. Stretton testified that Appellant would have only dug himself into a deeper hole on cross examination if he testified. N.T. Hearing (11/26/2014) at 35. Therefore, the Court properly found that Mr. Stretton was not ineffective in this regard and properly denied Appellant's Amended PCRA Petition because he did not give incorrect legal advice and/or there were other strategic reasons for recommending that Appellant not take the witness stand.

### C. Appellate counsel was not ineffective for failing to raise the adequacy of the redaction of Appellant's co-defendant's confession.

On August 10, 2007, Ford received and waived *Miranda* warnings and gave a statement regarding the letter, in which he admitted that he had given Dyches' photograph to "people on my block, to know who is snitching" and that he had "a guy...in the Law Library" make the superimposed photocopy of Dyches' photograph and statement. N.T. (02/03/2009) at 124-37. This statement was redacted to remove reference to Appellant. In his Amended PCRA Petition, Appellant asserts that appellate counsel was ineffective for failing to argue that Ford's confession was not sufficiently redacted and violated Appellant's Sixth Amendment right to confrontation pursuant to *Bruton v. United States*, 391 U.S. 123 (1968).

Appellant's claim of ineffective assistance of appellate counsel lacks arguable merit because Ford's August 10, 2007 confession was adequately redacted and the Court issued a limiting instruction to the jury that they could only consider the statement against Ford. *Bruton* held that a defendant's rights under the Confrontation Clause are violated when the confession of his non-testifying co-defendant naming him as a participant in the crime is read at their joint trial

12

even when the court specifically instructs the jury to only consider the statement against the co-defendant. *Bruton*, 391 U.S. at 135-36. *See also Commonwealth. v. Rainey*, 928 A.2d 215, 226-227 (Pa. 2007). In applying *Bruton*, the Supreme Court of Pennsylvania held that a co-defendant's confession is sufficiently redacted when all references to the defendant were replaced with "the other man" or "X" and accompanied by a limiting instruction. *Commonwealth. v. Travers*, 372, 768 A.2d 845, 851 (Pa. 2001); *Rainey*, 928 A.2d 215. Courts have distinguished between codefendant's confession that "expressly implicates" the accused from a confession that is not facially incriminating, but becomes inculpatory only when linked with evidence properly introduced at trial, finding the latter to be constitutionally permissible. *Commonwealth. v. James*, 66 A.3d 771, 777 *appeal denied*, 77 A.3d 636 (Pa. 2013).

Ford's statement as read to the jury went further in its protection of Appellant than the Supreme Court of Pennsylvania has minimally required. As read to the jury, Ford's statement did not refer to Appellant at all. Ford's statement was read to the jury as follows:

> Question: We're going to show you a color photograph of a Black male. Do you know this person?
>
> Answer: Yeah, I know him, but I am not signing it.
>
> \*\*\*
>
> Question: How long have you known him?
>
> Answer: I met him while in prison.
>
> Question: Where were you housed within the Philadelphia Prison System?
>
> Answer: In D24, in CFCF.
>
> Question: How recent were you there in the unit?
>
> Answer: Up until I was pulled on Saturday, August 4th.
>
> Question: Were you aware that someone sent a letter in the Detention Center threatening a Commonwealth Witness involved in your Homicide case?
>
> Answer: No.

Question: Do you know how a copy of an investigative interview I conducted with a Commonwealth Witness made it to the Detention Center?

Answer: No. I just gave it out to people on my block, to know who is snitching, and who is not.

Question: How did the photo of that Commonwealth Witness get imposed onto his interview?

Answer: I had a guy make it for me in the Law Library. I don't know his name. He don't even live on our block no more.

Question: When you were giving the investigative interview to people on your block, how many were passed out?

Answer: For real, I don't know. I heard a copy was mailed. I don't know who to.

Question: What did you think about that?

Answer: At the time, I didn't give it no thought.

Question: Do you know who the interview was mailed to?

Answer: No.

Question: Is there anything else you would like to add to your interview?

Answer: No.

N.T. Trial (02/03/2009) at 132-34. From the foregoing, it is clear that as redacted and read to the jury, the incriminating portions of Ford's confession made no reference to Appellant as the sender of the letter, and did not "expressly implicate" Appellant as a co-conspirator. Ford stated that he did not know who sent the letter. Also, Ford stated that he gave copies of the interview to people on his block. He never stated to whom specifically he gave the copies.

Moreover, immediately after the statement was read to the jury, the Court issued a limiting instruction that the jury could not consider the statement against Appellant, but only against Ford. N.T. Trial (02/03/2009) at 135. The Court renewed this instruction to the jury in its closing instructions. N.T. Trial (02/06/2009) at 51-54.

Despite the redaction of the statement and the Court's instructions, Appellant argues that Ford's statement was still suggestive circumstantial evidence and highly prejudicial to Appellant

14

because it was reasonable for the jury to infer that Ford's statement referred to Appellant because Appellant was seated next to Ford at the defense table. However, appellate courts have rejected this argument when it held: "our courts have distinguished a codefendant's confession that 'expressly implicates' the accused from a confession that is not facially incriminating, but becomes inculpatory only when linked with evidence properly introduced at trial". *Commonwealth v. James*, 66 A.3d 771, 777 (Pa. Super. 2013) *citing Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). Therefore, because the underlying claim regarding the adequacy of redaction lacks arguable merit, the Court properly denied Appellant's Amended PCRA Petition.

### D. Appellate counsel was not ineffective for failing to raise the constitutionality of Appellant's joint trial with a capital murder defendant on direct appeal.

Appellant candidly admits that he has no case law to support the underlying claim that it is unconstitutional for a non-capital defendant to be tried jointly with a capital defendant because it violates the non-capital defendant's right to trial by an impartial jury, but nonetheless raises it to preserve the issue for a later date should the law change. However, it is well-settled that counsel cannot be deemed ineffective for failing to raise a novel legal theory which has never been accepted by the pertinent courts. *Commonwealth v. Jones*, 811 A.2d 994 (Pa. 2002). Therefore, the Court properly denied Appellant's claim of appellate counsel's ineffectiveness in this regard.

## IV. Conclusion

Trial counsel was not ineffective for failing to call witnesses because Appellant knowingly, intelligently, and voluntarily waived his right to call witnesses in his defense and calling the witnesses Appellant now claims should have been called would not have changed the outcome at trial. Trial counsel did not impermissibly interfere with Appellant's free choice to

15

testify in his own defense by giving incorrect legal advice because, as trial counsel credibly testified at trial, he did not advise Appellant that his prior convictions could be used to impeach Appellant and had other strategic reasons for advising Appellant not to testify. Appellate counsel was not ineffective for failing to raise the adequacy of the redaction of Appellant's co-defendant's confession because the confession, as redacted and read to the jury, did not "expressly implicate" Appellant. Appellate counsel was not ineffective for failing to raise the constitutionality of Appellant's joint trial with a co-defendant charged with a capital offense because, as Appellant candidly admits that he has no case law to support the underlying claim, counsel cannot be deemed ineffective for failing to raise novel legal theories. Therefore, the Court properly denied all of Appellant's claims for relief in his Amended PCRA Petition. The Court's ruling should stand.

BY THE COURT:

LEON W. TUCKER, JUDGE

16